979 So.2d 566 (2008)
STATE of Louisiana
v.
Wray M. ANDERSON.
No. 07-KA-752.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
*567 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Joseph E. Roberts, Martin A. Belanger, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Provino C. Mosca, Attorney at Law, Harahan, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On April 25, 2006, the Jefferson Parish District Attorney filed a bill of information charging defendant, Wray M. Anderson, with theft of U.S. currency valued at over $1000 from the Succession of Austin Anderson, in violation of R.S. 14:67. Defendant entered a plea of not guilty on May 22, 2006. Trial was held on May 15, 2007, and the jury returned a responsive verdict of guilty of unauthorized use of movables in excess of $1,000.[1] On June 22, 2007, the trial court sentenced defendant to three years at hard labor, with credit for time served. The sentence was suspended and defendant was placed on active probation for three years. On July 20, 2007, the trial court ordered defendant to pay $168,830.02 in restitution. Defendant filed a Motion for Appeal, which was granted.
FACTS
Defendant is the son of Austin Anderson, Sr. ("Austin Sr.") and Lucille Anderson. He has one brother, Austin Anderson, Jr. ("Austin Jr."), and one sister. On May 14, 1996, defendant's mother, Lucille, died intestate. Defendant's father, who was an attorney, became the administrator of her estate. According to *568 Austin Jr., Austin Sr. indicated that Lucille's succession would not be opened until after Austin Sr.'s death. Austin Sr. died on December 29, 2001, leaving an olographic will dated December 26, 2001. In his will, Austin Sr. expressly revoked all prior testaments and named defendant as executor with full seizin and without bond. He left particular legacies of $1000 to defendant's sister and $3000 to each of defendant's sister's children. Defendant was named as the residual legatee.
At trial, Austin Jr. testified that shortly before his father's death, he discovered that his father had opened his mother's succession. Austin Jr. asserted that his father, Austin Sr., mishandled his mother's succession and defrauded him of at least $120,000 in his mother's succession by failing to list any of her separate property on the descriptive list and listing some of her separate property as community property. Austin Jr. filed a proof of claim in excess of $120,000 in his father's succession, thereby becoming a creditor in Austin Sr.'s succession. Austin Jr. explained that when there is a creditor in a succession, the creditor is paid prior to any legatees being paid. Austin Jr. further indicated that his cousin, Alfred Nippert, filed a $100,000 proof of claim and a $600,000 proof of claim, "which made a[sic] combined claims in excess of eight hundred thousand dollars against the succession of my father." Austin Jr. stated that the value of his father's estate was $540,811 on February 21, 2002. Accordingly, the value of Austin Sr.'s estate was less than the amount being sought by Austin Sr.'s creditors.
Austin Jr. further testified that in June 2002, the court issued an order in his father's succession proceeding that no debts were to be paid and no assets were to be sold unless defendant obtained creditor and court approval. However, he stated that he learned during defendant's deposition in the succession proceeding that defendant had disposed of assets of the estate without authority of the creditors or the court, and that defendant had written checks and made transfers to himself from Austin Sr.'s succession in excess of $100,000. The State introduced into evidence an annual accounting of Austin Sr.'s succession which confirmed that defendant wrote numerous checks to himself from succession funds. Defendant was subsequently removed as the executor of Austin Sr.'s succession.
The State entered into evidence 16 checks written by defendant to himself, drawn on the account of his father's succession, dating from June 2002 through December 2002. The checks in aggregate amount to approximately $106,000 and range from $1,000 to $30,000 each. The State further entered into evidence records of 13 online transfers from the succession account to the account of defendant, dating from June 2002 through January 2003. These transfers in aggregate amount to approximately $52,600. Dawn Farrell, the auditor and custodian of bank records for Metairie Bank and Trust where the succession account was located, testified to the authenticity of these records. Ms. Farrell testified that she had no knowledge of wrongdoing with regard to the checks and that defendant was the only person with authority to sign checks under the bank account agreement. Farrell further stated that the online transfers could only be accomplished with defendant's user I.D. and password. Austin Jr. testified that he, as a creditor of the succession, did not authorize these transactions.
The State also entered into evidence defendant's February 2004 "Response to Motion for Contempt and Confession of *569 Judgment" in the succession proceeding, wherein defendant stated:
Your petitioner admits that he appropriated some $161,600 of funds, primarily from Metairie Bank and Trust, from the Succession of Austin Anderson, without court approval and prior to the proof of and payment of legitimate claims against the Succession of Austin Anderson.
Austin Jr. identified the signature on this document as defendant's signature. The State also entered into evidence a descriptive list of the assets of the Succession of Austin Sr., an order removing defendant as executor of the succession, as well as a civil judgment obtained by the succession against defendant and an order assigning the succession's judgment to Austin Jr.
DISCUSSION
On appeal, defendant asserts the following two assignments of error:
1) The jury verdict was contrary to law and evidence.
2) The evidence was insufficient to convict defendant of any crime.
In State v. Hearold, 603 So.2d 731, 734 (La.1992), the Louisiana Supreme Court stated that, when the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. Accordingly, we will address defendant's second assignment of error first, because it relates to sufficiency of the evidence.
In his second assignment of error, defendant claims that the evidence, viewed in light most favorable to the prosecution, was insufficient to establish guilt beyond a reasonable doubt, because the State failed to prove the requisite criminal intent. The State responds that the evidence was clearly sufficient and argues that defendants intent in this case may be inferred from his actions and the circumstances.
The constitutional standard for testing the sufficiency of the evidence, under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Honore, 564 So.2d 345, 351 (La.App. 5 Cir.1990), writ denied, 569 So.2d 968 (La.1990). This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477, p. 6 (La.2/22/06), 922 So.2d 517, 521. The trier-of-fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the fact-finder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 05-0213, p. 11 (La.1/19/06), 921 So.2d 94, 101.
Defendant was convicted of unauthorized use of movables valued in excess of $1000,[2] in violation of LSA-R.S. 14:68, which provides in pertinent part:
A. Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an *570 immovable, according to the law pertaining to civil matters, is immaterial.
Money is a corporeal movable. Succession of Majoue, 97-710, p. 7 (La. App. 5 Cir. 11/25/97), 705 So.2d 225, 228. A person commits the crime of unauthorized use of a movable when he either takes or uses another's property without the owner's consent or by means of fraudulent practices. Although it does not require a person to act with intent to deprive the owner permanently of his property, LSA-R.S. 14:68 must reasonably be construed to require the existence of fraudulent intent. State v. Joseph, 05-368, p. 7 (La.App. 5 Cir. 1/17/06), 921 So.2d 1060, 1064; State v. Bias, 400 So.2d 650, 652 (La.1981). The State may produce direct or circumstantial evidence of fraudulent intent in unauthorized use cases. Id. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Davis, 40,382, p. 5 (La.App. 2 Cir. 10/26/05), 914 So.2d 1129, 1133, writ denied, 05-2419 (La.4/17/06), 926 So.2d 512. Though intent is a question of fact, it may be inferred from the circumstances of the transaction. State v. McKinney, 99-395, p. 6 (La.App. 5 Cir. 11/10/99), 749 So.2d 716, 719. State v. Calloway, 07-0012 (La.App. 1 Cir. 11/7/07), 978 So.2d 374.
In the present case, the State offered evidence that defendant engaged in 29 distinct transactions over the course of seven months, which ultimately dispossessed his fathers succession of over $150,000. The State offered evidence that defendant is both the drawer and the payee on each check and that his user I.D. and password were required for each online transfer. The State also presented evidence that defendant lacked authority to engage in these transactions without creditor and court approval, and defendant admitted in his February 4, 2004 pleading, entitled "Response to Motion for Contempt and Confession of Judgment, to the appropriation of $161,600 from Austin Sr.'s succession without court approval and prior to the proof and payment of legitimate claims against the succession of Austin Sr.
The jury obviously believed that defendant had the requisite criminal intent to take or use the succession funds without consent or by means of fraudulent conduct or practices. Considering that defendant disposed of succession funds without authority of the creditors and the court, the evidence that defendant wrote checks and made transfers to himself totaling over $150,000, and the fact that he admitted appropriating $161,600 from Austin Sr.'s succession, the jury could easily have inferred the requisite criminal intent from the circumstances.
Viewing the evidence in a light most favorable to the prosecution, we find that the evidence presented at trial was sufficient to establish that the State proved each element of the offense of unauthorized use of a movable valued in excess of $1,000 beyond a reasonable doubt. Accordingly, this assignment of error is without merit.
In his first assignment of error, defendant complains that the verdict written by the jury foreman was not responsive to the charge. The State responds that defendant has failed to brief this assignment of error, citing no legal authority and advancing no argument. Therefore, the State claims that this assignment of error should be dismissed as abandoned under Uniform Rules Court of Appeal 2-12.4. In the alternative, the State contends that the assignment is meritless because the jury obviously meant to return a responsive verdict and simply made an inadvertent "slip of the pen."
*571 In State v. Lauff, 06-717, p. 9 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819, this Court noted that "[r]estating an assigned error in brief without argument or citation of authority does not constitute briefing." Our review of defendant's brief reveals that he did not brief this assignment of error. Rather, he states as an assignment of error that "[t]he jury verdict was contrary to law and evidence," but he does not provide argument or cite authority for his position. Nevertheless, defendant asserts that this issue is an "error apparent of record." We agree. The verdict is a part of the pleadings and proceedings, and any error therein is reviewable as an error patent. State v. Robinson, 04-964, p. 17 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1127. Thus, we will address this issue in our error patent review.
ERRORS PATENT
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The only error patent discovered was the error in the jury's verdict that was set forth in defendant's first assignment of error.
Defendant was charged with theft of U.S. currency valued over $1,000 under R.S. 14:67. Although the list of responsive verdicts included, "guilty of unauthorized use of movables having a value in excess of $1000," the jury returned a verdict of "guilty of unautorized [sic] movement of movables in excess of $1000." The transcript reveals that the clerk read the verdict as written by the jury foreman. However, the prosecutor did not attempt to clarify the charge, defense counsel had no objection, and no poll of the jury was requested.
LSA-C.Cr.P. art. 813 provides:
If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.
The trial court should not have accepted this verdict, because it was nonresponsive. Thus, this Court must determine whether reversible error occurred.
According to LSA-C.Cr.P. art. 810, there shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury. When a verdict is ambiguous, the intent of the jury can be determined by reference to the pleadings, the evidence, the admissions of the parties, the instructions, and the forms of the verdicts submitted. State v. Robinson, 04-964 at p. 17, 896 So.2d at 1128.
In State v. Duke, 625 So.2d 325 (La.App. 3 Cir.1993), writ denied, 629 So.2d 1183 (La.1993), the bill of information charged defendant with aggravated oral sexual battery. The verdict sheet misstated the charge as "indecent behavior with a juvenile," but correctly listed the responsive verdicts as guilty, guilty of attempted aggravated oral sexual battery, guilty of oral sexual battery, guilty of attempted oral sexual battery, and not guilty. The jury returned a verdict of "guilty." The Duke court noted that the judge read the correct statute to the jury and furnished the jury with a list of the appropriate responsive verdicts and found that the jury was well aware of the elements of the crime charged. The court found that the jury clearly intended to find the defendant guilty of the charged offense rather than the incorrect offense stated on the verdict sheet because the charge was read to the jury and was stated numerous times during trial.
In State v. Froiland, 05-138 (La.App. 5 Cir. 7/26/05), 910 So.2d 956, the defendant was charged with theft of U.S. currency valued over $1,000 under R.S. 14:67, as *572 opposed to the theft of goods under R.S. 14:69.10, but the jury returned a verdict of guilty of theft of goods having a value of $500.00 or more. This Court emphasized, "at the very beginning of trial the jury was informed that the defendant was charged with theft, not theft of goods, by the clerk's reading of the bill of information, during the trial judge's preliminary instructions, and in the prosecution's opening statement." Likewise, "the first mention of the offense as theft of goods occurred in the State's rebuttal, where the prosecutor mentioned that the defendant was charged with theft of goods valued at over $500.00." This Court held that, considering the numerous times that the offense was referred to as theft, the verdict reflected the jury's intent to find the defendant guilty of theft rather than theft of goods.
In the present case, the record reflects that the trial judge instructed the jury on the definition of theft under R.S. 14:67 and the definitions of the permissible responsive verdicts set forth in LSA-C.Cr.P. art. 814(A)(26).[3] The actual verdict, "Guilty of unautorized [sic] movement of movables in Excess of $100000," is substantially similar to one and only one proper responsive verdict under LSC.Cr.P. art. 814(A)(26): Guilty of unauthorized use of movables having a value in excess of one thousand dollars, but only if a value in excess of one thousand dollars is stated in the indictment. The language "unauthorized movement of a movable" is never mentioned in the record until the verdict was read.
After careful review of the record, we find that it is clear that the jury intended to find defendant guilty of unauthorized use of movables in excess of $1,000. The only substantive difference between the proper verdict and the actual verdict is the substitution of movement for use. Because the evidence indicated that defendant moved funds via online transfer and by negotiable instrument from the succession account to his own bank accounts, it is plausible that the jury would associate such transactions with movement and then equate that term with the unauthorized use that is in fact a crime in Louisiana.
Considering the similarity between the jury's verdict and the responsive verdict of unauthorized use of movables in excess of $1000, along with the applicable law, we find that the intent of the jury was to find defendant guilty of unauthorized use of movables in excess of $1,000. Accordingly, we find that the error on the verdict form was consequently harmless.
DECREE
For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] The jury's verdict actually read: "Guilty of unautorized [sic] movement of movables in Excess of $100000." This issue is discussed in our error patent review.
[2] Unauthorized use of movables valued in excess of $1000 is a responsive verdict to the charged offense. LSA-C.Cr.P. art. 814(A)(26).
[3] LSA-C.Cr.P. art. 814(A)(26) lists the responsive verdicts that may be rendered when a bill of information charges Theft:

Guilty of theft of property having a value of five hundred dollars or more.
Guilty of theft of property having a value of three hundred dollars or more, but less than five hundred dollars.
Guilty of theft of property having a value of less than three hundred dollars.
Guilty of attempted theft of property having a value of five hundred dollars or more.
Guilty of attempted theft of property having a value of three hundred dollars or more, but less than five hundred dollars.
Guilty of attempted theft of property having a value of less than three hundred dollars.
Guilty of unauthorized use of movables having a value in excess of one thousand dollars, but only if a value in excess of one thousand dollars is stated in the indictment. Guilty of unauthorized use of movables having a value of one thousand dollars or less. Not guilty.