TERRI F. LOVE, Judge.
| [Grady Greene was sentenced to five years in prison for the unauthorized use of a movable in excess of one thousand dollars. We find that the trial court erred because the State failed to prove beyond a reasonable doubt that Mr. Greene possessed the requisite mens rea and reverse.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Karen Blanks entered into discussions with her friend, Grady N. Greene, for him to repair and renovate Ms. Blank’s home, which sustained damage during Hurricane Katrina. Ms. Blanks and Mr. Greene reached an agreement, on August 14, 2006, for Mr. Greene to perform the repairs for $67,000. Ms. Blanks transferred $25,180.21 into Mr. Greene’s account.

Ms. Blanks’ Testimony

Ms. Blanks testified that Mr. Greene was unable to commence work for some two weeks after the agreement was finalized and the money transferred because Mr. Greene had to go out of town on business. Ms. Blanks passed by her property in the middle of September and noticed that Mr. Greene performed work, as there was a flat-bed trailer parked in front *276 of her property, a tree was cut down, and a fence was removed from her property.
|2Ms. Blanks testified that Mr. Greene informed her that the house needed to be leveled and that he was concerned whether the two chimneys could be safely removed. On October 9, 2006, Mr. Greene and Ms. Blanks met at the property to survey the situation along with an associate of Mr. Greene’s who presented Ms. Blanks with an estimate of $6,800.00 to level the foundation piers.
Ms. Blanks testified that she informed her mortgage company of the situation and that she was instructed to obtain two additional estimates for the repairs. Ms. Blanks contacted two contractors regarding the chimney and whether the house needed to be leveled. After speaking with these contractors, Ms. Blanks informed Mr. Greene that taking the chimneys down would not affect the structural integrity of the home and they could be safely removed. Ms. Blanks told Mr. Greene to proceed with the work; however, Mr. Greene told Ms. Blanks that “he did not take other contractors words (sic), and he felt more comfortable if the house would be leveled.” Mr. Greene also informed Ms. Blanks that he would need to obtain a bid to have the chimneys removed. Ms. Blanks was surprised to learn that Mr. Greene would not be performing the work. Ms. Blanks stated that she informed Mr. Greene that he could proceed with completing other work on her property.
Ms. Blanks returned to the property around October 16, 2006, and saw that the trailer was gone and that it did not appear that any more work had been completed. Ms. Blanks tried to contact Mr. Greene several times between October 18 and October 26 without success.
On October 27, Ms. Blanks located Mr. Greene at his house and presented him with a demand letter outlining what she expected of Mr. Greene. Ms. Blanks also sent copies by certified and regular mail. On the morning of October 31, |s2006, Ms. Blanks went to Mr. Greene’s house and informed him that their contract was terminated. Ms. Blanks mailed a termination letter by certified as well as registered mail on that date. Ms. Blanks informed Mr. Greene that she wanted her money back within twenty-four hours or she would contact the District Attorney’s Office and take any action needed to recoup her money. Two of Mr. Greene’s workers were at the construction site, and Ms. Blanks had them ordered off the property.
Ms. Blanks acknowledged that one of the contractors who made a structural assessment of the property informed her in written correspondence that the house was indeed out of level and that “[t]his structural correction should be accomplish [sic] prior to continuation of work on the residence and especially prior to installation of drywall material.” Ms. Blanks testified that she did not feel that the former statement applied to any work other than the installation of drywall.

Detective Byron Francois

On November 15, 2006, Ms. Blanks made a complaint to the Economic Crime Unit of the Orleans Parish District Attorney’s Office. Detective Byron Francois reviewed Ms. Blanks’ complaint and met with her on November 31, 2006. Detective Francois met with Mr. Greene on December 6, 2006, and inquired if Mr. Greene had considered repaying Ms. Blanks. Mr. Greene submitted a written proposal offering to repay Ms. Blanks $20,000 at the rate of $5,000 a month beginning on December 31, 2006. Detective Francois met with Ms. Banks to determine if this was acceptable; however, Ms. Blanks informed him that the terms were unacceptable to her and that she would not accept the offer. Ms. Blanks testified that she needed to receive *277 at least $10,000 per month because she was paying both rent and a mortgage. Detective Francois arrested Mr. Greene on |4Pecember 20, 2006, prior to the date of his first payment.

Mr. Greene’s Testimony

Mr. Greene testified that after finalizing the agreement on August 14, 2006, he obtained a building permit from the Department of Buildings and Safety about two days later. He commenced work the following Monday by removing a tree that fell on a chain link fence in the front of the home as well as some of the wrought iron railing to create a space to park his trailer. In the rear of the house, Mr. Greene discovered a large beehive[1] in a fallen tree that needed to be removed. Mr. Greene apprised Ms. Banks of the situation and she removed the nest within a few days. Afterwards, Mr. Greene resumed work on her property by removing debris from outside the property before commencing work inside. Mr. Greene believed that some of Ms. Blanks’ neighbors were using her backyard as a dump because he discovered metal and other discarded material.
Mr. Greene commenced work on the inside of the structure by removing the air conditioning units, the gas radiators, clothing debris, and other personal materials that remained inside the structure. He also began removing the interior lathe walls and sills.
Mr. Greene explained that after removing the inner walls and getting the windows and doors open he was able to see uneven flooring in the building. He and his chief carpenter decided to inspect the cause of the floors shifting to the center of the structure where the fireplaces were. They examined the pilings and isolated twelve pilings that needed to be replaced. Mr. Greene believed that if he removed the fireplaces, the whole -structure could collapse.
Mr. Greene testified that he ceased working on the house after he and Ms. |sBlanks reached an impasse over whether the house should be leveled first or remove the chimneys. Mr. Greene relayed that Ms. Banks insisted that Mr. Greene proceed with removing the fireplaces prior to repairing or replacing the piers. Mr. Greene believed that this would be “suicidal” and refused to do it. Mr. Greene stated that their opinions differed regarding how to proceed and they waited for the money from Ms. Banks’ insurance company to do the foundation work. By mid-October, Ms. Banks informed Mr. Greene that she was not satisfied with the amount of work that had been done and terminated him.
Mr. Greene testified that Ms. Blanks demanded all of her money back and that he told her that was not fair. He agreed that he had not done $25,000 worth of work and that they agreed that he would repay her $20,000. He estimated that he performed approximately $4,600 worth of work on Ms. Blanks’ property prior to her terminating the contract.[2] Mr. Greene related that agreeing upon the method and manner of repayment created additional problems. Ms. Blanks wanted to be paid $10,000 in two equal installments. Mr. Greene informed her that he did not have $10,000 to repay her, but that he did have $5,000 to pay her that day.
Mr. Greene explained that he did not have the money to repay Ms. Blanks because he was keeping two jobs going and *278 that he was paying his crew, paying himself, and covering his business operating expenses with the money received from Ms. Blanks.

Licensing Board

Carl Bourgue, a residential supervisor for the Louisiana State Licensing Board for Contractors, testified that Mr. Greene was not registered with the Board Las a home improvement contractor.[3]

Court Proceedings

The State charged Mr. Greene with one count of theft in excess of one thousand dollars. Mr. Greene pled not guilty. The trial court found probable cause and granted the motion to suppress Mr. Greene’s statement. Following a bench trial in which the trial court incorporated the testimony from the preliminary hearing, the trial court found Mr. Greene guilty of unauthorized use of a movable in excess of one thousand dollars, to wit, $21,100 and ordered Mr. Greene to make restitution to the victim in the amount of $21,100 prior to sentencing. The matter was continued on several occasions to allow Mr. Greene to make restitution. Mr. Greene was sentenced to serve five years in the custody of the Department of Corrections. Mr. Greene’s motion for appeal followed.

ERRORS PATENT

A review of the record for errors patent reveals none.

UNAUTHORIZED USE OF A MOVABLE

Mr. Greene was convicted of unauthorized use of movables valued in excess of $1000, in violation of La. R.S. 14:68, which provides in pertinent part:
A. Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently.
Unauthorized use of movables valued in excess of $1000 is a responsive verdict to the charged offense. La. C. Cr. P. art. 814(A)(26). In State v. Bias, 400 So.2d 650, 652-53 (La.1981), the Louisiana Supreme Court discussed the nature of the offense as follows:
17A person commits the crime of unauthorized use of a movable when he either takes or uses another’s property without the owner’s consent or by means of fraudulent practices. R.S. 14:68, although not requiring that a person act with an intent to deprive the owner permanently of his property, must reasonably be construed to require the existence of fraudulent intent. See State v. Kelley, 241 La. 224, 128 So.2d 18 (1961).
[[Image here]]
[W]e construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the “evil” state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). C.Cr.P. art. 381.[4]
*279 Mr. Greene asserts that the evidence presented against him failed to establish that he was guilty beyond a reasonable doubt. In State v. Bridgewater, 00-1529, pp. 8-9 (La.1/15/02), 823 So.2d 877, 889, the Louisiana Supreme Court discussed the standard of review for claims challenging the sufficiency of the evidence as follows:
In reviewing the sufficiency of the evidence to support a conviction, we follow the due process standard of review enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984). That standard “preserves the role of the jury as the factfinder in the case but it does not allow jurors ‘to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.’ ” State v. Pierre, 93-0893 at p. 5 (La.2/3/94), 631 So.2d 427, 429. The jury is not allowed to engage in speculation .... ” 93-0893 at pp. 5-6, 631 So.2d at 429. In order for the trier of fact to convict and for the reviewing court to affirm a conviction, the totality of the evidence must exclude reasonable doubt.
Under Jackson, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. See State v. Jacobs, 504 So.2d 817, 820 (La.1987). When circumstantial evidence forms the basis of the conviction, the totality of such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, “[hjypotheses of innocence are merely methods for the trier of fact to determine the existence of a reasonable doubt arising from the evidence or lack of evidence.” State v. Shapiro, 431 So.2d 372, 389 (La.1982) (on reh’g) (Lemmon, J., concurring). This circumstantial evidence rule is not a separate test from the Jackson standard; rather, La. R.S. 15:438 merely “provides an evi-dentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found defendant guilty beyond a reasonable doubt.” State v. Wright, 445 So.2d 1198, 1201 (La.1984). “Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror’s reasonable doubt formula, it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.” State v. Chism, 436 So.2d 464, 470 (La.1983).
“The State may produce direct or circumstantial evidence of fraudulent intent in unauthorized use cases.” State v. Anderson, 07-752, p. 6 (La.App. 5 Cir. 2/6/08), 979 So.2d 566, 570. The trial judge made “credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the fact-finder’s discretion only to the extent necessary to guarantee the fundamental due process of law.” State v. Sosa, 05-0213, p. 11 (La.1/19/06), 921 So.2d 94, 101. Intent is a question of fact that can be “inferred from the circumstances of the transaction” by the fact-finder. Anderson, 07-752, p. 7, 979 So.2d at 570.
As to fraudulent intent, Mr. Greene’s chief contention is that the State failed to establish that he accepted Ms. Blanks’ *280 money with fraudulent intent or that he used the money fraudulently. Partially agreeing with Mr. Greene, the trial court found that the State failed to establish that Mr. Greene had the specific intent to deprive the victim of her money from the outset and did not find Mr. Greene guilty of theft.
|flThe State, however, contends that the evidence supported the crime asserting that the evidence established that, after Mr. Greene and Ms. Blanks became close friends, he sought to take advantage of her by entering into a contract to work on her home.[5] The State asserts that from the delays in completing the project, Mr. Greene’s lack of contact with Ms. Blanks, and his disappearances from the worksite any rational trier of fact could have found that Mr. Greene intended to permanently deprive Ms. Blanks of her money from the inception of the contract.
The trial court concluded that there was insufficient evidence to establish that Mr. Greene sought to defraud Ms. Blanks from the outset. Thus, the question remains whether Mr. Greene’s actions prior to Ms. Blanks terminating the contract were sufficient to establish fraud; and secondly, whether fraud and/or criminal intent can be inferred from the fact that the funds transferred to Mr. Greene were not available after the contract was cancelled.
The chief elements of the State’s circumstantial case were the purportedly small of amount of work completed by Mr. Greene, the fact that Ms. Blanks had difficulty or could not reach Mr. Greene for eight days, and the fact that work was not proceeding at the property during a two week period.
Mr. Greene never suggested that he completed anything but a small portion of the work and valued the work completed at $4,600. The trial court found no fault in the assessment, concluding that $21,100 was used improperly. With respect to the two week period wherein little or no work was being completed, the time period is too short to create an inference of fraudulent conduct.[6] Finally, the inability to reach Mr. Greene for eight days is not sufficient to create an inference | inof fraud.
Accordingly, review of the evidence presented against Mr. Greene, even under Jackson’s favorable standard, reflects that the State failed to establish beyond a reasonable doubt that Mr. Greene acted with fraudulent intent prior to October 31, 2006, when Ms. Blanks terminated the contract. The evidence failed to exclude the reasonable probability that Mr. Greene and Ms. Blanks had a legitimate business dispute as to how best to proceed with the repairs and renovation of Ms. Blank’s home, and that she terminated Mr. Greene’s services after he was reluctant to proceed in the manner suggested by Ms. Blanks. Lending legitimacy to Mr. Greene’s concerns about the condition of the property, one of the contractors that Ms. Blanks consulted confirmed Mr. Greene’s assessment of the need to level the foundation. Accordingly, it appears that on October 31, when Ms. Blanks terminated the contract, the dispute that existed between the parties was civil in nature not criminal and should have been handled in a civil proceeding, where any damages owed by either party could be properly assessed under the terms of the contract.
It is acknowledged that Mr. Greene’s actions of applying the money advanced by *281 Ms. Blanks to another job or drawing on the money to pay himself, viewed in the light most favorable to the State, could constitute evidence of fraudulent and/or criminal conduct. However, the misapplication of payments by a contractor is criminalized by La. R.S. 14:202 in certain instances and Mr. Greene was not charged with such a crime. In finding the defendant guilty of unauthorized use of movable, the trial court stated, “I find that at some point during the course of these proceedings the undertaking that was involving the gentleman and the lady, that he clearly used her money by fraudulent means, practices or representations | nfor his own personal gain.” The trial court inferred fraudulent conduct from Mr. Greene’s use of the money.
We do not find that the State’s circumstantial evidence excluded every reasonable hypothesis of innocence. A rational trier of fact, viewing the evidence in the light most favorable to the prosecution could not find that fraudulent intent was proven beyond a reasonable doubt.

DECREE

For the above mentioned reasons, we find that the trial court erred in that the State did not prove beyond a reasonable doubt that Mr. Greene possessed the requisite mens rea for the unauthorized use of a movable and reverse.
REVERSED.

. Mr. Green testified that it was a hornet’s nest.

. Mr. Greene also performed work at a properly owned by Ms. Blanks' mother where he restored the electrical service and was under contract to repair another house.

. The signed contracts and correspondence indicated that Mr. Greene was “licensed and insured LA # R-1344 2005.”

. The Louisiana Supreme Court reversed the defendant's conviction concluding that the default in the rental payments by defendant and his retention of a T.V. set following such default did not constitute "use without consent’’ or "use by fraudulent practices” for the purpose of the statute prohibiting unauthorized use of a movable.

. The exhibits include two greeting cards whereby Ms. Blanks expresses her affinity for Mr. Greene and she refers to herself as "Grady's Lady.”

. By comparison, La. R.S. 14:202.1(A)(1), relative to home improvement fraud, criminalizes the failure to do any work for a period of forty-five days after being compensated.