STATE OF LOUISIANA

VERSUS

AARON HARRELL

NO. 19-KA-371

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-5778, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING

July 08, 2020

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg

**CONVICTIONS AND SENTENCES VACATED; REMANDED**

  **JGG**
  **SJW**
  **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Gail D. Schlosser

COUNSEL FOR DEFENDANT/APPELLANT,
AARON HARRELL
     Jane L. Beebe

DEFENDANT/APPELLANT,
AARON HARRELL
     In Proper Person

**GRAVOIS, J.**

Defendant, Aaron Harrell, appeals his convictions for armed robbery with a firearm and possession of a firearm by a convicted felon. For the following reasons, we vacate defendant's convictions and sentences and remand the matter to the trial court for further proceedings.

## PROCEDURAL HISTORY

On October 17, 2018, the Jefferson Parish District Attorney filed a bill of information charging defendant, Aaron Harrell, with armed robbery in violation of La. R.S. 14:64 and sought the firearm enhancement provided under La. R.S. 14:64.3(A) (count one). The bill of information additionally charged defendant with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count two). Defendant pled not guilty at his arraignment.[1] On May 6, 2019, defendant filed a "Motion to Declare Louisiana's 10-2 Verdict Unconstitutional" that was denied on May 8, 2019. The case was subsequently tried before a 12-person jury that found defendant guilty as charged on both counts on May 14, 2019. The verdicts were eleven to one on both counts.[2] On May 17, 2019, defendant filed a Motion for New Trial that was denied on May 29, 2019. The trial court then sentenced defendant on count one to thirty years imprisonment at hard labor "plus five years for the firearm, for a total of thirty-five years at hard labor,"

---

[1] The State alleged in the bill of information that defendant was previously convicted of possession of cocaine, a violation of "La. R.S. 40:697.C," on April 22, 2013, under district court case number 12-1362, Division "A," of the 24th Judicial District Court. Although the bill of information identifies the statute as "La. R.S. 40:697.C," this seems to be an inconsequential typographical error, as the crime of possession of cocaine is defined in La. R.S. 40:967(C).

On March 28, 2019, the State amended count two of the bill of information to add that defendant was previously convicted of armed robbery, a violation of La. R.S. 14:64, on October 27, 1997, under district court case number 97-3187, Division "B," of the 24th Judicial District Court.

[2] At trial, in reading the jury's verdict, it was indicated that the verdict was eleven to one on both counts. Defense counsel requested polling of the jury, and polling slips were passed out for the jurors to complete. The trial judge then stated that there was a problem because the polling slips indicated that the verdict was unanimous on count one. The trial judge suggested that perhaps the jury was confused about the instructions and had the jury recomplete the polling slips after advising the jurors to indicate their individual votes. Subsequently, the trial judge indicated that the second set of polling slips was consistent with the verdict form. A review of the sealed polling slips indicates that the verdicts on both counts were eleven to one.

without the benefit of probation, parole, or suspension of sentence. It also sentenced defendant on count two to twenty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, and a one thousand dollar fine. The sentences were ordered to run concurrently with each other.

Immediately thereafter, the State filed a habitual offender bill of information alleging that defendant was a third-felony offender. On June 13, 2019, defendant filed a motion to quash the habitual offender bill, which was denied in open court that day. Defendant was then adjudicated a third-felony offender on count one (armed robbery). The trial court vacated its original sentence on count one and resentenced defendant to fifty years imprisonment at hard labor "plus five years pursuant to the statute for the firearm for a total of fifty-five years … without probation, parole or suspension of sentence," to run concurrently with the sentence on count two. Lastly, on June 13, 2019, defendant filed a Motion to Reconsider Sentence and a Motion for Appeal. The trial court denied the Motion to Reconsider Sentence and granted the Motion for Appeal on June 17, 2019.

On appeal, defendant argues the following assignments of error, to wit:

1.  The trial court erred in granting the State's La. C.E. art. 404(B) motion and allowing in evidence of other crimes.

2.  The trial court erred in denying the motion for a new trial and finding the evidence was sufficient to support the conviction for armed robbery and felon in possession of a firearm.

3.  The trial court erred in denying the motion for a new trial based on the non-unanimous jury verdict in which the punishment is necessarily confinement at hard labor.

## FACTS

On the morning of May 24, 2018, Valencia Harding (the victim) was outside of her daughter's house at 142 Rencopas Court in Jefferson Parish when a man (later alleged to be defendant, Aaron Harrell) approached her holding a black gun and ordered her to give him her purse and money. She told her assailant that she

did not have a purse or any money on her. The assailant then told her to hand over her earrings, watch, and wedding rings.[3] The assailant then ordered Valencia to turn around, and when she did so, he ran away in the direction of Jefferson Highway.[4] Valencia called 9-1-1 and reported that the robber had a gun and that he was male wearing a black hoodie and black sunglasses.

Officer Jonathan Eloie with the Jefferson Parish Sheriff's Office responded to the report of the armed robbery and went to 142 Rencopas Court. Valencia reported to Officer Eloie that the robber was dressed in all black clothing with a hoodie pulled over his head, wore sunglasses, and had a mustache, but was otherwise clean-shaven.[5] Upon additional questioning, Valencia added that her assailant was dark complected and appeared to be the same height as the officer, who was between 5'9" or 5'10".[6] She described the items that were taken from her and that the assailant's gun was similar to Officer Eloie's service weapon, a black semi-automatic Glock.

Sergeant Marc Macaluso, lead detective in this case, also spoke to Valencia who again described the robbery and her assailant's features. He detailed that at that time, Valencia did not describe tattoos on the assailant's face. However, he provided that she may not have seen his facial tattoos because he concealed himself with a hoodie and sunglasses. The area was canvassed, but no possible suspects were found.[7]

---

[3] Valencia described the jewelry as silver Michael Kors earrings and three silver weddings rings "full of diamonds." Valencia stated that the watch was a silver Michael Kors watch with rose gold on the inside with bezels around it. Her belongings were never recovered.

[4] Valencia testified that she did not want to give her jewelry to the assailant, but she was afraid he would kill her. She denied, however, that he touched or grabbed her.

[5] Officer Eloie denied that Valencia told him that defendant had tattoos on his face or neck, had missing teeth, or that she recognized his voice.

[6] When defendant was arrested, his height was noted as 5'5". Valencia testified that she is 5'1" and was wearing slippers when the armed robbery took place.

[7] As Sergeant Macaluso further investigated, he found video surveillance footage at a motel and store both located on Jefferson Highway that led to identifying three persons of interests; however, these persons of interest were eventually eliminated.

On June 12, 2018, Valencia was riding in a vehicle with her "God brother" headed to Jefferson Highway on Central Avenue when she saw two men standing outside of some apartments. She told her God brother that one of the men looked like the robber. He told her that he knew him (defendant) from somewhere, but did not know his name at the time. He then proceeded to make the block and stopped the vehicle near the men. Defendant then came up to the vehicle, and Valencia's God brother asked if there were any vacant apartments in the building. Defendant said he did not know because he lived down the street in some gray apartments. At that time, Valencia was able to clearly see defendant, and she recognized him as the robber due to the shape of his face, his mustache, and his height. She also recognized his voice from the robbery. Valencia called 9-1-1 again, and she met with the police and gave another description of defendant, who she believed was her assailant.[8] By that time, Valencia was able to give the police defendant's first name because her God brother had informed her of it. Sergeant Macaluso showed Valencia a photographic lineup, and she readily identified defendant from the lineup.[9] Thereafter, an arrest warrant was issued for defendant on June 13, 2018. At trial, Valencia also identified defendant in open court and responded positively when asked if she was absolutely sure that defendant was the same person who robbed her.

On the night of June 13, 2018, Officer Alexander Winks with the New Orleans Police Department and his partner, Officer Michael Dewey, were on patrol when he observed a man, later learned to be defendant, seated on the front porch of

---

[8] At trial, Valencia testified that she could not recall the exact description she gave to each police officer she spoke to. Specifically, she could not recall how tall she reported defendant was or at what point she detailed that defendant had tattoos on his face. Nonetheless, she provided that she told police on the day of the robbery that she would be able to recognize defendant if she saw him again, and she recognized the person on Central Avenue as the robber.

[9] Sergeant Macaluso asked Louisiana State Analytical Fusion Exchange to prepare the photographic lineup, as he testified that the Fusion Exchange has a bigger pool to draw from to prepare a lineup with distinct features, as defendant has tattoos on his face.

an abandoned house. Officer Winks approached defendant, who provided an identification card, and Officer Dewey ran a records check. In doing so, Officer Dewey found the Jefferson Parish arrest warrant for defendant for the armed robbery. Defendant was detained pending verification of the warrant. The officers conducted a pat-down search of defendant for weapons and found unknown pills in defendant's hand while they were placing him in handcuffs. The pills were later determined to be clonazepam (the generic form of Klonopin).

After defendant's arrest, Sergeant Macaluso learned that defendant lived at 1312 Claiborne Drive, in Jefferson Parish.[10] Sergeant Macaluso obtained a search warrant for that address and upon arrival, spoke to Sonia Chisley. Sonia testified at trial that she and defendant share a son, and she and defendant have had a relationship on and off since 1995. Sonia was aware that in May 2018, defendant was staying with "Wendel on Central." She detailed that he was living with her on Claiborne when she asked him to leave on May 21. Defendant was using drugs at that time and had asked her many times for money. She testified that on that day, he specifically had asked her for money to get heroin, and they got into an argument. On June 9, 2018, defendant showed up at Sonia's house. Defendant told her that he had something for her and showed her a silver woman's watch with white diamonds in the middle with "Michael Krocks name written in the middle of the watch." Sonia told defendant she did not want the watch because she knew defendant would want it back when he needed money for drugs. In court, Sonia read a letter that defendant had written to her from jail, where he asked her why she did not tell the police that he showed her a rose gold watch, instead of a silver watch, as it was being used as evidence against him. Defendant nonetheless maintained his innocence in the letter.

---

[10] Sergeant Macaluso testified that 1312 Claiborne Drive is just over a half mile away from the site of the robbery and one and a half miles from the area where defendant was arrested.

Wendel Sigur testified that in May of 2018, he was using heroin and crack cocaine daily and was living in an apartment on Central Avenue. Defendant, who Wendel knew as "Dark Side," lived in Wendel's apartment with him, and they would use drugs together daily. Wendel described that he met defendant while they were "using" at a dope house. Defendant came to live at Wendel's apartment for approximately two months after defendant's "wife" threw him out. Wendel allowed defendant to stay there in exchange for defendant obtaining drugs for himself and Wendel. Wendel detailed that defendant "had the connection" and would go out to get the drugs; he did not know, however, how defendant obtained money to pay for the drugs. He indicated that defendant did not have a job. Wendel stated that defendant did not have a car and used his bicycle to get around. Wendel denied ever seeing defendant with earrings, rings, or a watch like Valencia had.

During one interview with the State prior to trial, Valencia told the Assistant District Attorney that she recalled seeing defendant a few months before the robbery occurred at Jefferson Elementary School when she picked up her great niece. Defendant was picking up a little boy, and she and other parents noticed him because his shirt was dirty, and he was wearing slippers. Defendant was also on a bicycle at that time. Valencia knew the boy's mother's name was "Sonia."[11]

The parties stipulated that if called to testify, Sergeant Joel O'Lear, an expert in fingerprint examination, would testify that defendant is one and the same individual previously convicted: 1) on April 22, 2013 of possession of cocaine; 2) on October 27, 1997 of armed robbery; and 3) on June 13, 2018 of possession of clonazepam.

---

[11] Sonia confirmed that she knew Valencia's family, and the son she shared with defendant went to Jefferson Elementary in May 2018.

# ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that the trial court erred in denying his motion for a new trial as the State presented insufficient evidence of his identity as the armed robber.[12] Defendant points to alleged omissions in Valencia's description of him, including his height and her failure to mention that he had facial tattoos, had met him before, and that she recognized his voice. He notes there was no corroborating evidence, as neither Valencia's missing items nor a weapon was ever found during the investigation. Therefore, her identification alone is not sufficient proof beyond a reasonable doubt to convict him.

The State responds that when viewed in the light most favorable to the prosecution, the evidence was sufficient to convince a rational trier of fact that defendant was guilty of the charged crimes beyond a reasonable doubt. It submits that it negated any reasonable probability of misidentification in order to carry its burden of proof.

In reviewing sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a

---

[12] *See State of Louisiana v. Gabriel O. Hunter*, 19-901 (La. App. 4 Cir. 5/27/20), 2020 WL 2751914, where the Fourth Circuit addressed the defendant's assigned error of insufficient evidence before it addressed his assignment of error regarding the constitutionality of the non-unanimous verdict. By way of explanation for addressing the issue of sufficiency, the Fourth Circuit stated:

> *See State v. Hearold*, 603 So.2d 731, 734 (La. 1992) (observing that "[w]hen issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence"). As the Louisiana Supreme Court has explained, "[t]he reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Such an acquittal would necessarily prevent any retrial. *See State v. Gaines*, 96-1850, p. 4 (La. App. 4 Cir. 1/29/97), 688 So.2d 679, 682 (observing that "[a]lthough [the defendant's] conviction must be reversed on other grounds, the issue of sufficiency of evidence must be addressed" because "if there was insufficient evidence even in the face of an error so prejudicial as to warrant a new trial, then there can be no new trial"). Thus, the Louisiana Supreme Court has held that an appellate court's failure to address the sufficiency of the evidence, when raised, is error. *See State v. Morris*, 615 So.2d 327, 328 (La. 1993) (observing that "the court of appeal erred in pretermitting relator's contention that the evidence was insufficient to prove the validity of [his] earlier convictions, which [were] an essential element of the charged crime").

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Baham*, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, *writ denied*, 15-40 (La. 3/24/16), 190 So.3d 1189.

When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt. *Baham*, 169 So.3d at 566.

It is not the function of the appellate court to assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. *State v. Bradley*, 03-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80, 84, *writs denied*, 03-2745 (La. 2/13/04) 867 So.2d 688 and 08-1951 (La. 1/30/09), 999 So.2d 750.

In the present case, defendant was convicted of one count of armed robbery with a firearm and one count of possession of a firearm by a convicted felon. In challenging the sufficiency of the evidence, defendant does not contest the sufficiency of the essential statutory elements; rather, he challenges his identity as the perpetrator of the armed robbery and asserts that the State failed to negate any reasonable probability of misidentification.[13]

---

[13] Even though defendant only challenges one particular element, review of the record under *State v. Raymo*, 419 So.2d 858, 861 (La. 1982), shows that the State presented sufficient evidence to establish the remaining essential statutory elements of armed robbery with a firearm and possession of a firearm by a convicted felon. Valencia testified that defendant was armed with a gun when he took her jewelry, and

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *State v. Ray*, 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, *writ denied*, 13-1115 (La. 10/25/13), 124 So.3d 1096. A positive identification by only one witness is sufficient to support a conviction. *State v. Williams*, 08-272 (La. App. 5 Cir. 12/16/08), 3 So.3d 526, 529, *writ denied*, 09-0143 (La. 10/16/09), 19 So.3d 470. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297.

In *State v. Cowart*, 01-1178 (La. App. 5 Cir. 3/26/02), 815 So.2d 275, 284-85, *writ denied*, 02-1457 (La. 5/9/03), 843 So.2d 387, there was no physical evidence linking the defendant to the crime, and a single witness identified the defendant as the perpetrator of a shooting. At trial, the reliability of the eyewitness was attacked because the witness was a convicted felon, had been under psychiatric care, had initially lied to the police, gave a description that did not match the defendant, had perjured herself during motion hearings, and had changed her story about the crime scene and the number of shots she heard. Despite this lengthy list of deficiencies, this Court held that it was within the jury's discretion to believe the witness's testimony.

Upon review, we find that the State presented sufficient evidence to negate any reasonable probability of misidentification. In Valencia's first description of defendant in her 9-1-1 call immediately following the robbery, she did not state

---

her testimony was clear that she was intimidated. Also, the parties entered into a stipulation regarding defendant's three predicate felony convictions.

that he had facial tattoos; however, she did describe that he was wearing a black hoodie and black sunglasses, which would have impaired her ability to see his face clearly. In her description to Officer Eloie, she described that defendant was dark complected and had a moustache. When asked by Officer Eloie, she estimated that defendant was approximately his same height. It was later developed that defendant was several inches shorter; however, Valencia herself was 5'1" and did notice that defendant was several inches taller than her. Several weeks later, when Valencia saw defendant on the street, she had the opportunity to see him again and at that time, noticed that he had tattoos on his face and recognized his voice. Subsequently, Valencia contacted 9-1-1, and at that time, was able to immediately select defendant from a photographic lineup. Later on in the investigation, Valencia also realized that she had seen defendant at Jefferson Elementary School.

Any inconsistencies in Valencia's testimony as to at what time she noticed which physical markers were heard by the jury and ultimately appear to have been rejected by the jury. Taking into consideration the entirety of her testimony, we find that Valencia's positive identification of defendant as the robber is sufficient to support defendant's conviction of armed robbery. *See Williams*, *supra*. Therefore, the trial court did not abuse its discretion in denying defendant's motion for a new trial on the verdict as being contrary to the law and evidence. This assignment of error is without merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, defendant argues that the trial court erred in denying his motion for a new trial based on the non-unanimous jury verdict.[14]

---

[14] It is noted that defendant did not raise the non-unanimous jury verdicts issue in his motion for a new trial. Regardless, Louisiana courts have repeatedly held that the jury verdict is discoverable in the pleadings and proceedings for purposes of errors patent review. *See State v. Craddock*, 307 So.2d 342 (La. 1975); *State v. Sanford*, 248 La. 630, 181 So.2d 50 (1965); *State v. Anderson*, 07-752 (La. App. 5 Cir. 2/6/08), 979 So.2d 566, 571.

The penalty for a conviction of armed robbery is found in La. R.S. 14:64(B), which provides that whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:64.3(A) provides that when the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without the benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this subsection shall be served consecutively to the sentence imposed under the provisions of La. R.S. 14:64. La. R.S. 14:95.1(B) provides that whoever is found guilty of violating the provisions of this section shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence, and be fined not less than one thousand dollars nor more than five thousand dollars. Since the punishments for these offenses are necessarily confinement at hard labor, defendant had to be tried before a 12-person jury. *See* La. Const. Art. I, § 17; La. C.Cr.P. art. 782.[15]

Non-unanimous jury verdicts were previously allowed under both La. Const. Art. I, § 17 and La. C.Cr.P. art. 782, and the circumstances of the instant case. However, in *Ramos* v. *Louisiana*, No. 18-5924, 590 U.S. ---, 140 S.Ct. 1390, --- L.Ed.2d ---, (2020), 2020 WL 1906545, the United States Supreme Court found that the Sixth Amendment right to a jury trial—as incorporated against the States by the Fourteenth Amendment—requires a unanimous verdict to convict a defendant of a serious offense. The Court concluded:

There can be no question either that the Sixth Amendment's

---

[15] Both La. Const. Art. I, § 17 and La. C.Cr.P. art. 782(A) provide, in pertinent part, that a case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict, and that a case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.

unanimity requirement applies to state and federal criminal trials equally. This Court has long explained that the Sixth Amendment right to a jury trial is "fundamental to the American scheme of justice" and incorporated against the States under the Fourteenth Amendment. This Court has long explained, too, that incorporated provisions of the Bill of Rights bear the same content when asserted against States as they do when asserted against the federal government. So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court. (Footnotes omitted.)

*Id.* at 1397.

For purposes of the Sixth Amendment, federal law defines petty offenses as offenses subject to imprisonment of six months or less, and serious offenses as offenses subject to imprisonment over six months. The Sixth Amendment's right to a jury trial only attaches to serious offenses. *See generally Lewis v. United States*, 518 U.S. 322, 327-28, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996); *Hill v. Louisiana*, 2013 WL 486691 (E.D. La. 2013).

Based on *Ramos* and the fact that the instant case is on direct appeal,[16] we find that since the verdicts resulting from defendant's jury trial were not unanimous for these "serious offenses," in compliance with the United States Supreme Court's directive in *Ramos*, defendant's convictions and sentences are vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion.[17] Further, because defendant's convictions and sentences have been vacated, we pretermit any discussion of defendant's remaining assignment of error.

---

[16] *See Schriro v. Summerlin,* 542 U.S. 348, 351, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004), observing that "[w]hen a decision of [the United States Supreme Court] results in a 'new rule,' that rule applies to all criminal cases still pending on direct review," citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.").

[17] *See State v. Myles*, 19-0965 (La. App. 4 Cir. 4/29/20), --- So.3d ----, 2020 WL 2069885.

# CONCLUSION

For the foregoing reasons, defendant's convictions and sentences are vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion.

**CONVICTIONS AND SENTENCES VACATED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 8, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-KA-371

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
GAIL D. SCHLOSSER (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          JANE L. BEEBE (APPELLANT)
GRANT L. WILLIS (APPELLEE)

### MAILED
HONORABLE JEFFREY M. LANDRY            AARON HARRELL #389319 (APPELLANT)     HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)                             LOUISIANA STATE PENITENTIARY          (APPELLEE)
ATTORNEY GENERAL                       ANGOLA, LA 70712                      DISTRICT ATTORNEY
LOUISIANA DEPARTMENT OF JUSTICE                                              TWENTY-FOURTH JUDICIAL DISTRICT
1885 NORTH 3RD STREET                                                        200 DERBIGNY STREET
6TH FLOOR, LIVINGSTON BUILDING                                               GRETNA, LA 70053
BATON ROUGE, LA 70802