862 So.2d 163 (2003)
STATE of Louisiana
v.
Christina ECHEVERRIA.
No. 03-KA-898.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2003.
*164 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Cameron M. Mary, Assistant District Attorneys, Gretna, LA, for The State of Louisiana, Plaintiff-Appellee.
Margaret S. Sollars, Thibodaux, LA, for Cristina Echeverria, Defendant-Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Defendant, Cristina Echeverria, was charged by a bill of information on October 31, 2001 with theft of currency valued at over $1,000 in violation of LSA-R.S. 14:67, a charge to which the defendant pled not guilty. On November 8, 2002, a six-person jury returned a verdict of guilty of "theft of property with a value of $500 or more."[1]
After denying the defendant's motion for new trial on December 6, 2002, the trial judge sentenced the defendant to five years of imprisonment at hard labor. The judge suspended the sentence, placed the defendant on five years of active probation, and ordered the defendant to pay a $300 fine, as well as other specified fees. Additionally, the trial judge ordered the defendant *165 to pay restitution as a condition of probation "in that amount that the State will provide to the probation officer." This timely appeal follows.
FACTS
At trial, Yolanda Gibson, the controller at the Landmark Hotel in Metairie, testified that the defendant stole money from the hotel while the defendant was employed as the credit manager in the accounting department. According to Ms. Gibson, the defendant worked at the hotel for eight years until she left in December of 2000.[2] Ms. Gibson, the defendant's immediate supervisor, explained that she initially became suspicious of the defendant after an anonymous phone caller told her that the defendant was stealing from the hotel. After conducting an investigation, Ms. Gibson could find no evidence to confirm this information. Ms. Gibson's suspicions were again aroused when a representative from a credit card company informed her that the Landmark had requested a credit on a card that had never been charged by the hotel. The credit card belonged to one of the defendant's relatives.
After a two-month investigation into the defendant's transactions, Ms. Gibson discovered that the defendant had stolen money by manipulating the hotel's accounting system, in particular the Accounts Receivable Miscellaneous Clearing account, hereinafter referred to as the "A/R" account, and by removing cash from the bank deposits. Ms. Gibson testified that an independent audit had verified her findings.
Ms. Gibson explained the hotel's accounting procedures involved codes to represent transactions. One of these codes, "CSH" (cash), was used to represent a cash or check payment, and "CLP" (city ledger payment) was used to represent a check payment. Additionally, the code "TRC" (transfer credit) was used to transfer money from one account to another, as in the case when a credit is erroneously applied to the wrong account. A "TRD" (transfer debit) code would represent the debit to the account where the money was first placed. According to Ms. Gibson, only she and the defendant had access to post payments to the A/R account.
Ms. Gibson explained that the only way to post a check as a payment is by using the CSH or CLP code. Otherwise, the accounting system does not record the check as money received into the hotel, and the check will not be included in the amount of money that should be deposited in the bank. Ms. Gibson detailed three incidents in which the defendant posted checks with a "TRC" code rather than CSH or CLP codes. In two of these incidents, the defendant included the checks in question when she made the hotel's deposits in the bank. However, the deposit slips reflected that not all of the cash was deposited in the bank. The third incident involved transactions in which the defendant posted funds to the hotel as transfer credits, instead of cash or checks, for her daughter's wedding reception that was held at the hotel.
The first incident that Ms. Gibson detailed involved a function that the National Kidney Foundation held at the hotel in October and November of 2000. Ms. Gibson testified that the hotel's computer records revealed that the defendant had posted a check for the National Kidney Foundation in the amount of $2039.63 as a transfer credit on November 8, 2000. According *166 to Ms. Gibson, the credit was manually placed in the A/R account due to a loophole in the computer system. Further, Ms. Gibson said that the computer records do not reflect that the check was ever posted as a check or cash transaction, meaning that the money was never included as an amount that should be counted in the hotel's deposits. Ms. Gibson testified that the records reflected that $2,887.16 in cash should have been deposited on November 9, 2000. However, the defendant only deposited $397.46 in cash that day. Ms. Gibson testified that the reduced cash deposit went undetected because the defendant included the $2039.63 check (which had not been counted in the computer system) in the deposit.
The second incident involved a function with Alcoholic Anonymous held in April of 2000. As with the National Kidney Foundation's check, Ms. Gibson testified that the hotel's computer records reflected that the defendant had posted the check for this function as a transfer credit. According to Ms. Gibson, the computer records did not reflect that the check, in the amount of $1750, was ever posted with a check or cash code. Ms. Gibson testified that the records reflected that $4,450.98 in cash should have been deposited on May 26, 2000. However, the defendant only deposited $866.38 in cash that day. The reduced cash deposit went undetected because the defendant included the $1,750 check (which had not been counted in the computer system) in the deposit.
The final incident involved the defendant's daughter's wedding reception held at the hotel in August 2000. In this incident, the defendant opened the account and wrote a $500 check as a deposit. Ms. Gibson testified that this check, number 4804, was properly posted with a CLP code. However, the defendant posted another check (number 4843), as a transfer credit. She also posted $500 as a deposit and $213.35 as the balance paid in full, with transfer credit codes. Ms. Gibson acknowledged that both checks had been deposited in the bank. However, Ms. Gibson stated that the computer system had no record that check number 4843 and the transactions for $500 or $213.35 had ever been posted as cash or check payments.
The defendant and four witnesses testified at trial. The defendant admitted that she had the A/R account set up when the hotel first set up the computer system. However, she denied that she had manipulated the accounting system or stolen money from Landmark. While the defendant admitted that she made the deposit to the bank for the hotel on November 9, 2000, the defendant denied that she entered the corresponding credit to National Kidney's account in the A/R account. However, the defendant said that if she had posted the check to the A/R account, it would have been because the charges needed to be researched, since there were two accounts for National Kidney and neither account amounted to the total amount of the check. According to the defendant, the check remained in the miscellaneous account until the proper account was determined. The defendant explained that she debited the A/R account for the amount of the check and applied the transfer credit to National Kidney's master account upon checkout on November 10, 2000.
The defendant had a similar explanation for the Alcoholics Anonymous function. Although she admitted making the deposit that included their check on May 26, 2000, the defendant denied that she had posted the corresponding credit into the A/R account. However, the defendant said that if she had posted their check to the A/R account, it would have been because the *167 name on the check and the name on the account did not match. Specifically, the defendant explained that the account was set up as "Alcoholic Deepsouth," whereas the check for the function was from the Greater New Orleans Service Board of Alcoholics Anonymous. The defendant subsequently acknowledged, however, that the check's memo line indicated the check was for "Deep So Convention 2000." The defendant explained that she debited the A/R account for the amount of the check and applied the transfer credit to Alcoholic's Anonymous master account upon checkout on May 30, 2000.
The defendant admitted that she had processed the checkout for both functions with transfer credits. However, defendant surmised that the transfer credit was necessary because someone else had posted the checks to the wrong account and a transfer credit was needed to apply the payment to the proper accounts. The defendant admitted that she had made the deposits for the hotel on November 9, 2000 and May 26, 2000.
Finally, the defendant said that no one ever told her that she should not have handled her daughter's account at the hotel. With regard to the transactions posted as transfer credits, the defendant claimed that she evidently had difficulty posting these transactions due to "glitches" in the system. The defendant said that she "could have" brought the check to the front desk and that they "could have" posted it to the wrong account, which would have necessitated a transfer credit to correct the posting. According to the defendant, the explanations of the transfers would have been documented. The defendant said that since the state's exhibits did not include these slips, she could not explain the reasons behind the transfers. The defendant claimed that she paid the first two $500 charges, and that her father paid the remaining two charges on the account.
The defendant's witnesses were either current or former employees of the Landmark Hotel and testified about the hotel's mail and accounting procedures. Lisa Taylor testified that had worked at the hotel for twenty-two years. At the time of trial, she was the director of sales at the hotel. Ms. Taylor testified that checks frequently were mailed to the hotel, that the mail was opened by the administrative assistant to the executive director and that checks were ultimately sent to the accounting department. However, Ms. Taylor said that she was not involved in any of the accounting procedures at the hotel.
At the time of trial, Noelle West had worked at the hotel for four years and was the revenue manager. She testified that she had also worked at the front desk and that there were occasions when advance deposits were posted to the wrong account. If the reservation had not checked in, a "reverse charge" was made to the first account and the deposit would be applied to the proper account. Otherwise, the adjustment would be considered a "transfer charge." Ms. West explained that, when making corrections, the explanation of the transactions would be documented. Ms. West testified that while working at the front desk, however, she did not have access to the A/R account.
Pat Crawford testified that she was the front office manager in 2000. Ms. Crawford testified she had posted checks to clients' accounts as part of her duties. She further stated that she would post a check to the miscellaneous account when the name on the check did not have a matching account. However, Ms. Crawford stated that she did not know the code for a check, and she acknowledged that accounting department verified the work of the front office. In particular, Ms.
*168 Crawford stated that the defendant was responsible in 2000 for ensuring that the accounts balanced and for billing the hotel's clients.
Angela Nicoll stated that she had worked in the accounting department for two months with the defendant and had worked at the front desk and in reservations as well. Initially, Ms. Nicoll said she was at the hotel in 2000, but later acknowledged that she had left in 1998. Ms. Nicoll said that multiple accounts were frequently opened for the same organizations, as in the case of the National Kidney Foundation. However, she stated that in the event that a check came in to the hotel and the name of the account could not be located, the check would not be posted to the miscellaneous account. Rather, a new account would be opened and the check would be posted to the new account. She also stated that transfer credits and debits would have to be documented with explanation slips.
On rebuttal, Ms. Gibson clarified that many departments could post an advance deposit to an account and could transfer a bill into the A/R account. However, only an employee of accounts receivable could post a payment to the A/R account. Ms. Gibson stated that only she or the defendant could have posted the credits in the A/R account, and that she was certain the defendant was the person who made the postings into the A/R account.
DISCUSSION
By her sole assignment of error, the defendant contends that the evidence is insufficient to support her conviction because the state did not exclude every reasonable hypothesis of her innocence. The state responds that the evidence was sufficient to support the defendant's conviction.
The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82. When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypotheses of innocence." Under this statute, the fact-finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence when analyzing circumstantial evidence. See, State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56. The Jackson standard of review is an objective standard for testing the all evidence, both direct and circumstantial, for reasonable doubt. Id.
LSA-R.S. 14:67(A) sets out the elements of theft as follows:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Zeno, 99-69 (La.App. 5 Cir. 8/31/99), 742 So.2d 699, *169 706, wit denied, 00-0105 (La.6/30/00), 765 So.2d 1065.
The thrust of the defendant's argument is that the state failed to prove that she was the person who committed the theft. However, it appears that the state's evidence excluded any reasonable hypothesis of the defendant's innocence. It is undisputed that the defendant made the deposits on November 9, 2000. It is also undisputed that the amount of cash that was deposited that day was $397.46, when the computer records indicate that $2887.16 should have been deposited. Likewise, the defendant deposited $866.38 on May 26, 2000 when the computer records indicate that $4450.98 should have been deposited. Further, even though the checks for these functions were deposited in the bank, there is no record that the checks were processed as payments to the hotel.
Although the defendant's checks for her daughter's reception were deposited in the bank, the defendant only posted one of her deposits (check number 4804), with the proper code. Thus, the other check (number 4843), and the other transfer credit transactions, which amounted to $1213.35, were not processed as payments made to the hotel.
In returning the guilty verdict, the jury obviously believed Ms. Gibson's testimony. This is a credibility determination and it is not the function of the appellate court to evaluate the credibility of witnesses, nor to overturn the trier of fact on its factual determination of guilt. State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 118, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464. Based on Ms. Gibson's testimony, as well as the other evidence presented by the state, it appears that the evidence at trial was sufficient to exclude every reasonable hypothesis of innocence and that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant committed the offense for which she was convicted.
This assignment of error is without merit.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters were discovered:
The record does not reflect that the defendant was arraigned on the amended bill of information. Originally, the bill of information alleged that the crime occurred between January 1, 1998 and December 20, 2000. On the day of trial, the State amended the bill of information to reflect that the crime occurred between March 1, 2000 and December 31, 2000. LSA-C.Cr.P. art. 555 provides that the failure to arraign the defendant is waived "if the defendant enters upon trial without objecting thereto" and that "it shall be considered as if he had pled not guilty." Because the defendant proceeded to trial without objection, we find that the defendant waived any irregularity in the arraignment. See, State v. Charles, 00-1586, p. 11 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 712.
We also find that the record reflects that the trial judge failed to specify the amount and payment plan when ordering the defendant to pay restitution. LSA-C.Cr.P. art. 895.1 provides the "restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant." At sentencing, the prosecutor stated that the amount of restitution was $13,000 and that *170 the parties had discussed the amount in conference. The trial judge responded:
THE COURT:
Well, it is, and the State will make that available to the Probation office. It is a little over thirteen thousand dollars. I'm going tothat will be part of the res [sic]that will be part of the condition of probation is that you make restitution in that amount that the State will provide to the probation officer....
Subsequently, the prosecutor informed the court that the amount of the theft was actually over $100,000, but that the victim had collected some money from the insurance company. Thereafter, the court specified the restitution should be "[t]hirteen thousand whatever it is, the amount over what the insurance company paid."
In State v. Berkeley, 00-1900 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, 656, writ denied, 01-1659 (La.4/26/02), 814 So.2d 549, this Court found that the trial judge failed to set a specific amount to be paid in restitution when the judge ordered the defendant to pay the victim twenty-five percent of the defendant's take-home pay for five years. The Berkeley court vacated the defendant's sentence and remanded for resentencing to afford the trial court the opportunity to consider the earning capacity and assets of the defendant, and to set a determinate amount of restitution. See also, State v. Alexander, 97-1199 (La.App. 5 Cir. 9/29/98), 720 So.2d 82, 88, writ denied, 98-3109 (La.4/9/99), 740 So.2d 628 and State v. Peters, 611 So.2d 191, 193 (La.App. 5 Cir.1992), where this court vacated the defendant's sentence because the trial judge failed to set a determinate payment schedule for restitution payments.
The trial court did not set a determinate amount of restitution in this case. Based on the foregoing, we find that the defendant's sentence must be vacated and the matter must be remanded for resentencing to afford the trial court the opportunity to set a determinate amount of restitution and to establish a payment schedule.
Accordingly, for the reasons assigned herein, the conviction of defendant, Cristina Echeverria, is affirmed. However, the sentence is vacated and the matter is hereby remanded to the trial court for resentencing in a manner consistent with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.
NOTES
[1] LSA-R.S. 14:67(B)(1) provides for sentencing based on the value of the goods taken, with "five hundred dollars or more" being the highest value referenced. Although the defendant was charged with theft of over $1,000, the jury returned the statutorily delineated verdict of guilty of theft of $500 or more.
[2] The amended bill of information alleges that the defendant committed the theft between March 1, 2000 and December 1, 2000.