| STATE OF LOUISIANA | * | NO. 2021-KA-0119 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| ELIJAH MEALANCON | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 519-430, SECTION "DIVISION L"
Judge Angel Harris,
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*
(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-
Woods, Judge Paula A. Brown)

Jason Rogers Williams
DISTRICT ATTORNEY
G. Benjamin Cohen
CHIEF OF APPEALS
Brad Scott
ASSISTANT DISTRICT ATTORNEY
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Meghan Harwell Bitoun
LOUISIANA APPELLATE PROJECT
P.O. Box 4252
New Orleans, LA 70178

     COUNSEL FOR DEFENDANT/APPELLANT

           **AFFIRMED**
           **12/22/2021**

This is a criminal appeal. Defendant, Elijah Mealancon ("Defendant"), seeks review of his conviction of unauthorized use of a movable, a violation of La. R.S. 19:68, and four-year prison sentence. For the reasons set forth below, Defendant's conviction and four-year prison sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

On February 28, 2014, the State charged Defendant, via a bill of information, with several offenses, including: one count of contracting without a license in violation of La. R.S. 37:2160; four counts of misapplication of payments in violation of La. R.S. 14:202; four counts of exploitation of the infirmed in violation of La. R.S. 14:93.4; and five counts of unauthorized use of a movable in violation of La. R.S. 14:68.[1]

This matter came for a bench trial on November 19, 2018. The State proceeded on two (2) of the charges: count one, unauthorized use of a movable (U.S. currency valued at $1,500.00 or more); and count three, exploitation of the

---

[1] The charges in the bill of information list separate counts as to each of Defendant's five victims. This Court, in *State v. Mealancon,* 17-0556 (La. App. 4 Cir. 10/18/17), 316 So.3d 942, affirmed the district court's judgment, quashing four counts of contract fraud charges in the bill of information.

1

infirmed by theft and/or by means of fraudulent conduct, practices, or representations.[2]

Three witnesses, the victim Mary Scales (Ms. Scales"), New Orleans Police Sergeant Frank Denton ("Sgt. Denton") and Fred Franke ("Mr. Franke") testified at trial, and the parties entered into a stipulation regarding the purported testimony of defense witness Leo Soniat ("Mr. Soniat").

*Ms. Scales*

Ms. Scales testified that she lived in a duplex house located at 2125-2127 Jackson Avenue ("the property"). Following Hurricane Katrina, a group of volunteers repaired the 2125 side of the duplex, but could not repair the 2127 side. Defendant, who was with the original volunteer group, said he could repair the 2127 side of the duplex for $33,000.00. On May 2, 2010, Ms. Scales and Defendant entered into a contract, with a specific list of repairs to be completed,[3] and she gave him a check for $33,000.00 dated May 3, 2010. Ms. Scales said once Defendant had been paid, he did little work on the property. According to Ms. Scales, one day, Defendant arrived at the property "with some little children," but they did not perform any of the work specified on the list. She spoke with Defendant approximately a month after she had paid him about the lack of work

---

[2] The remaining charges are still pending.

[3] The contract or "job card," which was admitted into evidence, specified that for the sum of $33,000.00, the following work would be completed at 2127 Jackson Avenue:

> "Gutt [sic] home; change and replace rotten wood as needed; sheetrock, float, tape, prime and paint all walls; refurbish floors as able; if unable to refurbish flooring will install hardwood flooring where needed; install ceramic tile in kitchen and bathroom; install baseboards and trim where needed; replace windows if needed; install medinice [sic] cabinet, toilet, tub and vanity; install kitchen cabinets, countertop and sink; install (4) four a/c & heating units; install all ceiling fans and light fixtures."

being performed on the property, and Defendant assured her that the property would "get fixed."

Ms. Scales testified that the property had also been burglarized. According to Ms. Scales, burglars entered the house through the walls of the unrepaired 2127 side of the duplex, and took tools and all of her doors located in the repaired 2125 side of the duplex. She said she believed the burglars "knew exactly how to get in [the property] from one side to the other side." Following the burglary, on November 14, 2012, Ms. Scales filed a complaint against Defendant with the district attorney's office, reporting that she paid Defendant $33,000.00 to repair the property and that Defendant had not made the repairs he contracted to repair. In the complaint, which was admitted into evidence, Ms. Scales indicated that Defendant agreed to complete all repairs "by Christmas 2012".

### Sergeant Denton

Sgt. Denton testified he worked with the district attorney's office as an economic crimes investigator. In November of 2012, Ms. Scales filed a complaint form for economic crimes against Defendant and Sgt. Denton was assigned to investigate the complaint. As part of his investigation, Sgt. Denton obtained a copy of the contract, a copy of the check verifying payment to Defendant in the amount of $33,000.00, and visited the job site to determine the amount of work that had or had not been completed. Sgt. Denton recounted that when he arrived at the property on May 6, 2013, he observed debris in the rear room and new sheetrock on the walls, which "had not been taped, floated, or painted."

Sgt. Denton testified that before becoming a police officer, he was a general contractor and had previously worked as a licensed general contractor in the State of Louisiana for thirty (30) years. He said, as a general contractor, he had "done

millions of dollars in contract work in residential, commercial, industrial, [and] institutional types of projects." Sgt. Denton holds a degree in civil engineering, and said he had testified as an expert in general contracting a dozen times within the six years preceding the trial. The State then offered Sgt. Denton as an expert in general contracting, but Defendant objected. Over Defendant's objection, the district court qualified Stg. Denton to testify as an expert in the area of general contracting.

Sgt. Denton opined that based upon his inspection of the property, the value of the work performed on the property was $3,100.00. Noting that Defendant returned $1,900.00 to Ms. Scales, Sgt. Denton testified the total credit due to Defendant was $5,000.00.

### Mr. Franke

Mr. Franke testified that after Hurricane Katrina he and others founded Operation Nehemiah, a faith-based nonprofit. Operation Nehemiah partnered with Defendant's ministry, Elijah Christian Ministries, to repair Ms. Scales' property. Mr. Franke recounted the work that had been performed on the property was the demolition and removal of debris, mold remediation, replacement of rotten studs, installation of electrical and plumbing, and sheetrock, and he estimated the value of the work performed on the property was "[p]robably in the $30,000.00 range." Mr. Franke affirmed that he was not a licensed contractor, and he had never reviewed the contract or the specified work that was to be completed on the property. He said that Operation Nehemiah volunteers completed all of the work on the 2127 side of the duplex. As to the work on the 2125 side, Defendant or one of his appointed personnel directed them as to what work needed to be performed.

### Mr. Soniat

4

The defense intended to call Mr. Soniat as a witness, but because he had not been served with a subpoena to appear, Mr. Soniat was not present in court. However, the parties stipulated that had Mr. Soniat been called to testify, he would have stated the following:

> [H]e was a volunteer contractor who worked along with Operation Nehemiah and Elijah Christian Ministry consistently on [the] … duplex … located at 2125-2127 Jackson [Avenue], New Orleans, Louisiana. … [H]e would testify that the work he did or his group did at 2127 Jackson [Avenue] [consisted of] gutting, electrical, insulation, hanging of [s]heetrock, float and tape, prime and paint upstairs and downstairs and changing of rotten boards as needed.

Following a one-day trial, the district court judge found Defendant guilty on the charge of unauthorized use of a movable and not guilty on the charge of exploitation of the infirmed.

A sentencing hearing was held in the district court on February 7, 2019. Defendant was sentenced to four years incarceration in Orleans Parish Prison, with credit for time served, and ordered to pay restitution in the amount of $25,000.00. On February 26, 2019, Defendant filed a motion to reconsider the imposed sentence based upon his medical conditions, which the district court denied on November 19, 2019.

This appeal followed.

## ERRORS PATENT

In accordance with La. C.Cr.P. art 920, a review on the face of the record for errors patent reveals none.

## DISCUSSION

Defendant raises three assignments of error:

(1) there is insufficient evidence to convict Defendant of unauthorized use of a movable;

5

(2) the district court's restitution order was inadequate and illegal; and

(3) the sentence in this case is unconstitutionally excessive.

***Assignment of Error No. 1: Insufficient Evidence***

In his first assignment of error, Defendant contends the evidence was insufficient to find him guilty of unauthorized use of a movable.

This Court, in *State v. Hutsell,* set forth the standard for determining a claim of insufficiency of the evidence as follows:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, [20]00-0674 (La. 6/29/01), 796 So.2d 649, 657 (citing *State v. Captville*, 448 So.2d 676, 678 (La. 1984)).

> When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *Neal*, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under *Jackson* to prove guilt beyond a reasonable doubt to a rational jury. *Id.* (citing *State v. Rosiere*, 488 So.2d 965, 968 (La. 1986)).

17-0112, pp. 15-16 (La. App. 4 Cir. 4/18/18), 241 So.3d 542, 551 (quoting *State v. Hickman*, 15-0817, p. 9 (La. App. 4 Cir. 5/16/16), 194 So.3d 1160, 1165-66). "Under the *Jackson* standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *State v. Williams*, 11-0414, p. 18 (La. App. 4 Cir. 2/29/12), 85 So.3d 759, 771. Further, "a fact finder's [sic] credibility determination is entitled to great weight and should not be disturbed unless it is contrary to the evidence." *Id.* But where there is no direct evidence presented proving one or more of the elements of the offense, La. R.S.

6

15:438 governs circumstantial evidence and provides "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." "Stated differently, 'the reviewer as a matter of law, can affirm the conviction only if the reasonable hypothesis is the one favorable to the state and there is no extant reasonable hypothesis of innocence.'" *State v. Green*, 449 So.2d 141, 144 (La. App. 4 Cir. 1984) (citation omitted). "This test is not separate from the *Jackson* standard; rather it simply requires that 'all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.'" *State v. Hoang*, 16-0479, p. 3 (La. App. 4 Cir. 12/21/16), 207 So.3d 473, 475 (citation omitted). If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty. *State v. Captville,* 448 So.2d 676, 680 (La. 1984). Therefore, "where the evidence is purely circumstantial, if it does not exclude every reasonable hypothesis of innocence, a rational juror cannot find defendant guilty beyond a reasonable doubt without violating constitutional due process safeguards." *State v. Monds*, 91-0589 (La. App. 4 Cir. 2/10/94), 631 So. 2d 536, 539.

Defendant was convicted of the unauthorized use of a movable in violation of La. R.S. 14:68, which provides in pertinent part:

> Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be

7

classified as an immovable, according to the law pertaining to civil matters, is immaterial. [4]

In *State v. Bias,* 400 So.2d 650, 652-53 (La.1981), the Louisiana Supreme Court discussed the nature of the offense, opining:

> A person commits the crime of unauthorized use of a movable when he either takes or uses another's property without the owner's consent or by means of fraudulent practices. R.S. 14:68, although not requiring that a person act with an intent to deprive the owner permanently of his property, must reasonably be construed to require the existence of fraudulent intent. *See State v. Kelley,* 241 La. 224, 128 So.2d 18 (1961).[5]

> \* \* \*

> [W]e construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the "evil" state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). C.Cr.P. art. 381.

Defendant argues that the State's evidence was insufficient to prove that he possessed the *mens rea* or fraudulent intent required to support a conviction of unauthorized use of an immovable. In support, Defendant relies on the testimony of Mr. Franke and the stipulation of Mr. Soniat's purported testimony that substantial work was completed on the property. Mr. Franke, an admitted unlicensed contractor, testified that the value of the work completed on the property was worth approximately $30,000.00. Mr. Franke also confirmed that he never reviewed the contract between Defendant and Ms. Scales, thus he had no

---

[4] While the offense, unauthorized use of a movable, is principally aimed at the unauthorized use of automobiles, money is a corporeal moveable capable of being taken or used in an unauthorized manner. *See State v. Greene,* 09-2723, p. 8 (La. 1/19/11), 55 So.3d 775, 779.

[5] The same *mens rea* showing required to support a conviction for unauthorized use of a movable is required to support a theft conviction. The difference between the two crimes is that to support a theft conviction, the defendant must be shown to have intended to permanently deprive the victim of whatever may be the subject of the misappropriation. To support a conviction of unauthorized use of a movable, the defendant need not have intended to deprive the victim permanently of the movable.

way of knowing the scope of work to be completed. Mr. Soniat, through a stipulation, provided that not only did they gut the property, they hung and floated sheetrock, primed and painted upstairs and downstairs, and changed the rotten boards on the 2127 side of the duplex.[6] Defendant urges that based upon the testimony of these witnesses there is a reasonable hypothesis of innocence, thereby absolving him of guilt on the charge that he had fraudulently taken Ms. Scales' money in the amount of $33,000.00.

The district court soundly rejected the testimony of Mr. Franke and the stipulation of Mr. Soniat. In finding Defendant guilty of fraudulently taking Ms. Scales' money, the district court specifically addressed each line item of work that Defendant contracted to perform:

> The work that was specified to be done was gut home, change or replace rotten wood as needed, [s]heetrock, float, tape, prime, stain all walls, refurbish the floors, install new hardwood floors if it wasn't able to be refurbished, install ceramic tile, and as I go through this list, I note that none of this was done. There might have been some [s]heetrock parked up against the walls, but there was no floating, no taping, no priming, no painting. There's no evidence that there were any floors that were refurbished, there's certainly no evidence that ceramic tile was installed, there's no evidence that baseboards were installed and trim where needed, there's no evidence regarding placement [of] windows, there's no evidence regarding the installation of a medicine cabinet, toilet, tub, and vanity, there's no mention or evidence about installing kitchen cabinets, countertops, and sinks, there's no mention of installing four [a/c] and heating units, and there's no mention of installing all ceiling fans and light fixtures. Quite simply, what was done, if anything, in this [c]ourt's opinion, was what was done by the busload of kids who came in, did some sort

---

[6] Mr. Soniat's stipulation, to the extent that the sheetrock was floated and painted, is in direct conflict with Sgt. Denton's testimony that he inspected the property and the sheetrock had not been taped, floated or painted. Additionally, in his brief, Defendant represents that pursuant to the stipulation, Mr. Soniat would have testified that the value of the work completed on the property was $34,000.00. However, a review of the record reflects that no such stipulation was entered into with regard to Mr. Soniat's opinion of the value of the work he alleged was completed on the property.

of work maybe in gutting a home, left the debris behind. I just don't know why a man of the cloth would do these things. . . The [c]ourt finds the defendant guilty as to the unauthorized use of a movable count.

Moreover, at the sentencing hearing, the district court squarely addressed the credibility of Mr. Franke, stating:

I remember your witness. Your witness came in here and said the value of the work done on the home was approximately $30,000.00. I did not believe that witness. … That testimony was unbelievable.

Similarly, in *State v. Greene*, 08-1318 (La. App. 4 Cir. 11/12/09), 26 So. 3d 274, *rev'd,* 09-2723 (La. 1/19/11), 55 So.3d 775, the defendant, a contractor, unlicensed in the state of Louisiana, was charged with theft for taking money from the victim for house repairs he failed to complete and refusing to return the money. The defendant never claimed that he completed anything but a small portion of the work he had contracted to perform, and there was only a two-week time period involved wherein the work was not proceeding at the speed which the victim desired. The jury found the defendant guilty of the lesser-included offense of unauthorized use of a moveable. The defendant appealed the conviction, alleging that he did not have the requisite *mens rea* or criminal intent to commit unauthorized use of a moveable. On appeal, this Court reversed the district court judgment, finding the evidence was insufficient to prove the fraudulent intent necessary for the conviction. The State sought a writ of *certiorari* to the Louisiana Supreme Court. In reversing this Court's opinion and reinstating the jury verdict, the Supreme Court opined that based on the fact that the defendant misrepresented his qualifications in the contract, a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have determined the defendant

10

possessed the requisite *mens rea* for a conviction of unauthorized use of a movable.

Turning to the case *sub judice*, there is no dispute that Ms. Scales paid Defendant $33,000.00 to repair her property after Hurricane Katrina. Despite the passage of two years, between the time Ms. Scales tendered payment (May of 2010) and the time she notified the district attorney's office (November of 2012) of Defendant's fraudulent conduct, Defendant had not come close to completing the repairs he was contracted to perform on the property. As expressed by the district court, the record is devoid of any evidence that the hardwood floors were refurbished or that ceramic tile, baseboards and trim were installed as per the contract agreement. In addition, there is no evidence, including the testimony of Defendant's witnesses, that the medicine cabinet, toilet, tub, and vanity or the kitchen cabinets, countertops, and sinks were installed as per the contract agreement. Moreover, in spite of his failure to do the work as specified in the contract, Defendant initially only offered Ms. Scales a reimbursement of $1,900.00. On the morning of the sentencing hearing, Defendant tendered $5,000.00 to the district court as reimbursement to Ms. Scales. Defendant had ample time to complete the work or reimburse Ms. Scales her payment of $33,000.00, minus the value of the minimal work performed on the property. Defendant did neither. As previously noted, "the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *Williams*, 11-0414, p. 18, 85 So.3d at 771.

Applying the *Jackson* standard, and in viewing the evidence in the light most favorable to the prosecution, we conclude the evidence was sufficient for a reasonable factfinder to determine that Defendant possessed the requisite

fraudulent intent necessary to satisfy the *mens rea* requirement of La. R.S. 14:68.

Defendant's insufficiency of evidence claim is without merit.

*Assignment of Error No. 2: Restitution*

Defendant challenges the legality of the district court's restitution order. Defendant argues on appeal, that pursuant to La. C.Cr.P. art 895.1(A)(1), his sentence is illegal because the district court ordered an indeterminate payment of restitution. La. C.Cr.P. art 895.1(A)(1) provides, in pertinent part, that "[w]hen a court places a defendant on probation, it shall, as a condition of probation, order the payment of restitution . . . in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain."

Defendant contends that the district court, in setting the restitution at $25,000.00 did not precisely base that amount on the evidence presented at trial. Defendant urges that the evidence adduced at trial showed that Defendant refunded Ms. Scales $1,900.00, Sgt. Denton testified that the value of the amount of work completed on Ms. Scales' property was $3,100.00, and Defendant tendered $5,000.00 to Ms. Scales at the sentencing hearing. Defendant argues that because the amount of district court's restitution order was not based on the evidence, it is nonspecific and, therefore, illegal. In support of his claim, Defendant cites *State v. Berkeley,* 00-1900, p.12 (La. App. 5 Cir. 5/30/01), 788 So.2d 647, 656, wherein the appellate court found that the trial court failed to set a specific amount to be paid in restitution when the judge ordered the defendant to pay the victim twenty-five percent of the defendant's take-home pay for five years. The *Berkeley* Court vacated the defendant's sentence and remanded the matter "for resentencing to

12

afford the trial court the opportunity to consider the earning capacity and assets of the defendant, and to set a determinate amount of restitution." *Id.*[7]

The State responds that Defendant did not properly preserve, for challenge on appeal, his claim that the restitution amount was improper because he did not contemporaneously object to the sentence on that basis nor did Defendant raise it as an issue in his motion to reconsider sentence.[8]

La. C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." Likewise, La. C.Cr.P. art. 881.1(A)(4)(E) states:

> [f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

---

[7] Defendant also cites *State v. Echeverria,* 03-898, p. 11 (La. App. 5 Cir. 11/25/03), 862 So. 2d 163, 169, wherein the appellate court found that the trial court "failed to specify the amount and payment plan when ordering the defendant to pay restitution." At the sentencing hearing, "the prosecutor stated that the amount of restitution was $13,000 and that the parties had discussed the amount in conference." *Id.* at 169-170. The prosecutor later advised the Court "that the amount of the theft was actually over $100,000, but that the victim had collected some money from the insurance company." *Id.* at p. 12, 862 So. 2d at 170. The trial court "specified the restitution should be '[t]hirteen thousand whatever it is, the amount over what the insurance company paid.'" *Id.* The restitution in *Echeverria* was found to be nonspecific, and the appellate court reversed and remanded the case for re-sentencing to a determinate amount established by the trial court, and to set a pay schedule.

[8] The State also argues that Defendant's reliance on C.Cr.P. art. 895.1, which addresses restitution when the defendant is placed on probation, is misplaced. The State maintains the controlling article is C.Cr.P. Art 883.2, which provides:

> In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.

The State, citing *State v. Perry*, 15-0510, p. 1 (La. 2/5/16), 183 So. 3d 509, contends that "[r]estitution cannot always be determined with exactitude, and a trial court therefore has great discretion in setting the amount, as long as the trial court complies with La.C.Cr.P. art. 883.2." Having found Defendant failed to preserve this issue on appeal, we pretermit discussion of the State's argument.

At the sentencing hearing, the district court ordered Defendant to pay the victim restitution in the amount of $25,000.00. Specifically, the following colloquy regarding restitution ensued between the district court and the State:

> THE STATE:
> I did the math, your Honor. I believe with the defendant's $5,000.00 check less $31,100.00 which would include the $1,900.00 paid back to the victim equates to $26,100.00.
>
> THE COURT:
> Make it look like $25,000.00. I am going to give him some credit for the gutting.

Review of the record reflects that Defendant did not lodge a contemporaneous objection following this exchange. Additionally, while Defendant timely filed motion to reconsider sentence, he did not challenge the amount of restitution he was ordered to pay. Rather, Defendant challenged his term of imprisonment based on his inability to receive the medical treatment he needs while incarcerated. Defendant's only reference to restitution in his motion to reconsider sentence was to relay to the district court that he was "raising funds to go towards restitution for the victim." Moreover, restitution was not argued at the hearing on the motion to reconsider sentence.

It is well-settled that a defendant must argue the specific grounds that the motion to reconsider sentence is based on either in the motion itself or may allege them contemporaneously at a hearing because the district court must be informed of the alleged errors. *See State v. Reynolds*, 99-1847, p. 2 (La. App. 3 Cir. 6/7/00), 772 So. 2d 128, 130; *see also State v. Aggison*, 628 So. 2d 1115, 1115 (La. 1993). Having found that Defendant did not contemporaneously object or raise the specific claim of the restitution order in his motion to reconsider sentence, we conclude Defendant failed to preserve the instant restitution challenge for appellate

14

review and it will not be considered. *See State v. Johnson,* 03-903, p. 12 (La. App. 5 Cir. 12/9/03), 864 So.2d 645, 653 (where the defendant—who filed a motion for reconsideration of sentence claiming he was entitled to a downward departure from a mandatory minimum sentence but failed to raise a specific claim that such a departure was warranted based on the non-violent nature of the underlying offense and predicate offenses—was precluded from raising that specific claim for the first time on appeal).[9]

***Assignment of Error No. 3: Excessive Sentence***

Defendant asserts that his four-year sentence is unconstitutionally excessive. He urges that in his motion to reconsider sentence, the district court failed to "meaningfully consider" his medical records in imposing a prison sentence, rather than placing him on probation or placing him on house arrest with the exception that he be allowed to seek medical treatment.[10]

La. Const. art. I, § 20 explicitly prohibits excessive sentences. "Although a sentence is within the statutory limits," the sentence may still violate a defendant's constitutional right against excessive punishment. *State v. Every*, 09-0721, p. 7 (La. App. 4 Cir. 3/24/10), 35 So.3d 410, 417 (quoting *State v. Smith*, 01-2574, p. 7 (La. 1/14/03); 839 So. 2d 1, 4). "However, the penalties provided by the

---

[9] *See also State v. Duncan,* 53,194, p. 4 (La. App. 2 Cir. 1/15/20), 290 So.3d 251, 254, where the defendant, who failed to argue that the trial court did not articulate a factual basis for the sentence in his motion to reconsider sentence, waived his entitlement to review the issue on appeal.

[10] Defendant argues that because his medical records are not contained in the district court's record, the district court failed to "meaningfully consider" them. Defendant further notes that his appellate counsel's attempts to obtain the records from his trial attorney have been unsuccessful. Although Defendant's medical records are not contained in the records, the motion to reconsider sentence set forth that Defendant suffers from "Crohn's, Glaucoma, Type 2 Diabetes, Uveitis and Prostate problems. Further, Defendant made clear at the hearing on the motion to reconsider sentence that he was in need of outside medical treatment in connection with his numerous medical problems.

legislature reflect the degree to which the criminal conduct is an affront to society." *State v. Cassimere*, 09-1075, p. 5 (La. App. 4 Cir. 3/17/10), 34 So.3d 954, 958. "A sentence is [un]constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime." *State v. Ambeau*, 08-1191, p. 9 (La. App. 4 Cir. 2/11/09), 6 So.3d 215, 221. "A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice." *State v. Vargas-Alcerreca*, 12-1070, p. 25 (La. App. 4 Cir. 10/2/13), 126 So.3d 569, 583 (quoting *State v. Galindo*, 06-1090, pp. 15-16 (La. App. 4 Cir. 10/3/07), 968 So.2d 1102, 1113).

In reviewing a claim that a sentence is excessive, an appellate court generally "must determine whether the trial court adequately complied with [the] statutory guidelines [set forth] in La. C.Cr.P. art. 894.1" and whether the sentence is warranted under the facts established by the record. *State v. Wiltz*, 08-1441, p. 10 (La. App. 4 Cir. 12/16/09) 28 So.3d 554, 561 (quoting *State v. Batiste*, 06-0875, p. 18 (La. App. 4 Cir. 12/20/06) 947 So. 2d 810, 820). If "adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine 'whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators . . . .'" *State v. Bell*, 09-0588, p. 4 (La. App. 4 Cir. 10/14/09), 23 So.3d 981, 984 (citation omitted).

However, even where there has not been full compliance with La. C.Cr.P. art. 894.1, resentencing is unnecessary where the record shows an adequate factual basis for the sentence imposed. *State v. Stukes*, 08-1217, p. 25 (La. App. 4 Cir.

16

9/9/09), 19 So.3d 1233, 1250 (quoting *State v. Major*, 96-1214, p. 10 (La. App. 4 Cir. 3/4/98), 708 So.2d 813, 819). Further, La. C.Cr.P. art. 881.4(D) expressly states that an "appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." *See also State v. Williamson,* 10-466, pp. 18-21 (La. App. 5 Cir. 12/13/11), 81 So.3d 156, 167-168 (where a four-year sentence of a first-felony offender, like Defendant, convicted of unauthorized use of a movable, was not deemed excessive.)

In the case *sub judice*, Defendant was sentenced to four years in Orleans Parish Prison, with credit for time served, for his conviction of unauthorized use of a movable in excess of five hundred dollars. At the time the crime was committed, December 2012, La. R.S. 14:68 provided, in pertinent part: [11]

> [w]hoever commits the crime of unauthorized use of a movable having a value of five hundred dollars shall be fined not more than five thousand dollars, imprisoned for not more than six months, or both. Whoever commits the crime of unauthorized use of a movable having a value in excess of five hundred dollars shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than five years, or both.

At the sentencing hearing, Ms. Scales testified that "[i]t has affected me bad because I gave him $33,000 to get the house fixed and he never fixed it. What hurts is I can't sleep at night. I just think, think, think and I am going through something. I can't pay my bills and this hurts." After hearing Ms. Scales' victim impact statement, the district court, prior to sentencing Defendant, explained:

> The [b]ill of [i]nformation in this matter alleges an ongoing crime from May 2, 2010 to this day. To this very day you still have money that you are not authorized to have. …

---

[11] La. R.S. 14:68 was amended in 2017 to read: [w]hoever commits the crime of unauthorized use of a movable having a value of one thousand dollars or less shall be fined not more than five hundred dollars, imprisoned for not more than six months, or both. Whoever commits the crime of unauthorized use of a movable having a value in excess of one thousand dollars shall be fined not more than five thousand dollars, imprisoned, with or without hard labor, for not more than two years, or both.

17

[T]he crime … was committed as of Christmas 2011 or 2012 because that was the date that you agreed that you would have the work completed. … [In] 2010, 2011, 2012, 2013, 2014, 2015 [and] 2016, the prescribed sentence was zero to five years. It wasn't until 2017 that the State legislature decided that for this particular offense that the prescribed penalty would be up to two years. So there is no question in this [c]ourt's mind that as a matter of law at the point in time when you should have had the contract completed but you did not, the potential sentence was up to five years in the penitentiary.

What is so devastating in this matter … is that you took advantage of your victim when she was most vulnerable. A man of the cloth who should have been utilizing … your position to help people. … You used the church. . . .

Thereafter, the district court, again, restated all of the repairs Defendant was required to complete under the contract, but failed to perform. Following this recitation, the district court concluded:

Sir, anything less than a jail sentence would deprecate the seriousness of your crime. Your conduct manifested nothing short of deliberate cruelty to your victim. Cruelty when your victim was most vulnerable. You have had eight years to make this right. You have had five years since the criminal charges were filed to make this right. I can't help but presume although you are entitled to a trial and you got a trial and you got a fair trial. And, I listened to every single thing[,] all your lawyer brought before me. But I can't imagine that you could ever even dream of looking in the mirror and saying, I didn't commit this crime. You had all this time to make it better and you didn't.

At the hearing on the motion to reconsider sentence, while Defendant argues that the district court, in denying his motion, failed to "meaningfully consider" his medical conditions, the record is devoid of any such evidence. To the contrary, the record reflects that the district court was aware of Defendant's medical concerns. In fact, the district court stated that it "will send this medical information to the attorney for the jail to see if he can . . . do something about it, or . . . house him at another facility" where he can receive the required medical care. In addition, Defendant did not receive the maximum sentence of five years, nor was he

18

imprisoned at hard labor. He was sentenced to serve four years, with credit for time served, at the Orleans Parish Prison where he will be close to family and can receive medical care.

Accordingly, we find that Defendant's four-year sentence was not unconstitutionally excessive. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed.

**AFFIRMED**

19